**The STATE of Oklahoma, Plaintiff in Error,**

**v.**

**Bruce HARP, Defendant In Error.**

**No. A–14760.**

Court of Criminal Appeals of Oklahoma.

July 2, 1969.

Don E. Wood, Dist. Atty., Loys Criswell, Asst. Dist. Atty., Cimarron County, for plaintiff in error.

Robert Loofbourrow, Boise City, for defendant in error.

Merle Lansden, Judge District Court, Cimarron County, Okl., by Jim A. Rinehart, his attorney, El Reno.

## MEMORANDUM OPINION

NIX, Judge.

Bruce Harp was charged with the crime of Murder in the District Court of Cimarron County, the Honorable Judge Merle Lansden, Presiding. A jury was waived and the evidence was presented to the trial judge. The State and defendant had rested their case, and finished their argument, and the trial judge rendered judgment as follows:

"THE COURT: Well, ladies and gentlemen, this is an extremely difficult case for any judge to be called on to decide.

Under the American system of criminal prosecution, the prosecution must be accusatoral and not inquisitoral. By that it means the full burden is on the State to prove each and every element constituting the crime by legal and competent evidence. Even the guilty can not be convicted upon improper evidence or if the state fails to carry out the burden.

I don't make the laws, I merely try in my own method to interpret them as I see them. We have recently had a number of Supreme Court decisions, Supreme Court of the United States, which in my opinion the Supreme Court has in effect amended our constitution under the guise of interpretation. But no matter what my personal opinion is, I am bound by the laws of the United States. The most recent case that goes into this matter in full is Miranda versus Arizona.

The opinion is by Justice Warren as so many of the opinions have been, that in my opinion in effect amends the constitution. Under the Miranda decision it does not make, the guilt or innocence has nothing to do with constitutional provisions, that before a confession is to be accepted when a person is in custody or his freedom of action is limited in any significant manner, he must be warned. There is a warning that must be given. First one is he must be warned he has a right to remain silent. That anything he says may be used against him. He also must be warned he has a right to have an attorney present. He must further be warned if he is not able to hire an attorney one will be furnished for him.

Now, Miranda versus Arizona goes on and says the burden of proof of any waiver on the part of the state, they have that burden. It is not on the defendant but the question of waiver is not present here because this young man was never warned. The evidence clearly shows there was no warning.

It is my judgment that under the rulings of the Supreme Court of the United States it is not necessary the person has to actually be under arrest. It is sufficient that his freedom of action be limited.

Now, in this case this defendant was brought to the county courthouse in Cimarron County, Oklahoma, by the deputy sheriff of this county. It doesn't make any difference who told him to bring him. He was brought here by the depu-

ty sheriff and taken to the district attorney's office.

Frankly I confess I would have had a great deal of difficulty about this matter but prior to the time that any statement was made either to his father or to the other people, the assistant district attorney of this district mentioned the word 'lie detector test' in connection with these boys.

It is my finding that when that word was mentioned directed to these boys that the finger of suspicion was moving toward him. It doesn't make any difference what happened thereafter. In the absence of the warning required under the Miranda decision, any statement he made is absolutely inadmissible.

Now, I realize that it is not a very pleasant thing to do what I feel I must do. I earnestly suggest to this father that he has a real duty and something should be done but I have no alternative except to find this young man not guilty. And I so find."

After the above oral dissertation, the trial judge filed in said cause a written "Judgment and Finding of Fact", as follows:

"Now on this 16th day of November, 1967, the same being a judicial day of said court, and the time duly appointed for trial of the above entitled cause; and Don E. Wood, District Attorney for the First Judicial District of the State of Oklahoma, and Loys Criswell, Assistant District Attorney appearing for the State of Oklahoma; and Robert H. Loofbourrow of Boise City, Oklahoma, appearing for the defendant, Bruce Harp; and it further appearing that the defendant is present in open court and is represented by counsel; and it further appearing to the court that the State of Oklahoma and the defendant herein have specifically waived the right of a trial by jury; the court thereupon proceeded to hear the evidence produced by the State of Oklahoma from witnesses sworn and examined in open Court; and the State of Oklahoma having rested and the de-

fendant having moved the court for a directed verdict based upon the fact that the State of Oklahoma had failed to sustain its burden to show that the confession introduced into evidence by the State of Oklahoma was admissible as being a voluntary confession.

The Court, during the process of the presentation of the State of Oklahoma, as to the evidence produced had reserved the question of admissibility of the confession on the part of defendant. The Court then proceeded to consider the evidence relative to the admissibility of the confession of the defendant given in the presence of his father and another and subsequent confession given shortly thereafter in the presence of the father of the defendant and also in the presence of the sheriff of Cimarron County, Oklahoma, and Mr. Loys Criswell, Assistant District Attorney of Cimarron County, Oklahoma.

The Court, in connection with the admissibility of the confession of Bruce Harp, defendant herein, makes the following specific findings of fact:

1. That the defendant, Bruce Harp, on the 31st day of July, 1967, was a resident of Cimarron County, Oklahoma, and of the age of 14 years.

2. That on the night of July 31, 1967, the defendant, with two minor brothers, was occupying temporary lodging in a motel or apartment house located in Cimarron County, Oklahoma. That at the hour of approximately 11:30 or 12:00 o'clock P.M., said minor boys had retired for the night and at that time their father was in the office of the Assistant District Attorney in Boise City, Oklahoma.

3. That the deputy sheriff of Cimarron County, Oklahoma, one Bob White, was parked in such a position he could observe the place where the defendant, Bruce Harp, was spending the night of July 31 and August 1, 1967. The purpose of said officer observing said place of abode of the de-

fendant is not clear from the evidence introduced.

4. That at about the hour of 11:30 or midnight of July 31, 1967, the sheriff of Cimarron County, Oklahoma, contacted by radio his deputy and directed that the defendant and his two minor brothers who at that time had retired for the night be brought to the office of the Assistant District Attorney of Cimarron County, Oklahoma.

5. That Bob White, deputy sheriff of Cimarron County, Oklahoma, directed the defendant and his two brothers to dress and accompany him to the office of the Assistant District Attorney. That the defendant, Bruce Harp, was told by said deputy he was being taken to the office of the Assistant District Attorney of Cimarron County, Oklahoma, at the courthouse in Boise City, Oklahoma, for questioning.

6. That the defendant, after dressing, was immediately taken to the office of the Assistant District Attorney in Boise City, Oklahoma.

7. That after arrival at the office of the Assistant District Attorney of Cimarron County, Oklahoma, in Boise City, Oklahoma, the defendant was in fact questioned relative to certain events in connection with the crime with which he was subsequently charged in this court. That said questioning was done by the sheriff of Cimarron County, Oklahoma, in the presence of the Assistant District Attorney of Cimarron County, Oklahoma, and in the presence of the father of the defendant, Bruce Harp. It also appears Mr. Criswell, Assistant District Attorney, also participated in such questioning but the extent of such questioning on the part of the Assistant District Attorney is not quite clear from the evidence.

8. The court finds that the Assistant District Attorney of Cimarron County, Oklahoma, in the presence of the defendant, Bruce Harp, at the very least suggested, if not actually threatened the use of a lie detector test to be taken by defendant, Bruce Harp.

9. The court further finds that very shortly after the conversation relative to the use of a lie detector test the defendant, his father and two minor brothers went into the outer office of the Assistant District Attorney where the defendant confessed to his father that he in fact did shoot and kill his mother. That almost immediately thereafter the defendant and his father returned to the inner office of the Assistant District Attorney where such confession was repeated in the presence of the sheriff of Cimarron County, Oklahoma, and in the presence of the Assistant District Attorney.

10. The court finds that the burden was on the State of Oklahoma to show the confession of the defendant was voluntary under the rules announced in Arizona vs. Miranda, [Miranda v. Arizona,] 384 U.S. 436, [86 S.Ct. 1602, 16 L.Ed.2d 694].

11. The Court finds that at no time after the defendant, Bruce Harp, was taken into custody by the deputy sheriff of Cimarron County, Oklahoma, until the time of his confession to his father and subsequent confession was the defendant advised as to his rights in the following particulars:

A. His right to remain silent

B. The fact that anything he might say could be used against him in a subsequent trial of the case

C. His right to have an attorney present

D. The fact that if he was unable to hire an attorney one would be furnished him by the State of Oklahoma

E. The Court further finds that in connection with the conversation relative to use of a lie detector test, the defendant was never warned he could not be compelled to take such test nor that if in fact he did take such test the

result of such test could not be used against him.

12. The Court finds that in such cases under the laws of Oklahoma and the United States of America, the simple evidentiary test of whether defendant's will was overborne becomes paramount. The rules relative to such confession as understood by this court are that a confession under which life becomes forfeit must be an expression of free choice and in each case the question to be decided by the court is whether the will of defendant was overborne at the time he confessed.

This court therefore finds that when defendant was advised by the deputy sheriff of Cimarron County, Oklahoma, it would be necessary for him to dress and be taken to the office of the Assistant District Attorney of said county for questioning, said defendant was in fact in custody and thereafter was entitled to be advised as to all of his rights as set forth in the case of Arizona vs. Miranda heretofore quoted.

The Court therefore finds that the State of Oklahoma has failed to carry out the burden under the rules herein announced and therefore the confession of the defendant, Bruce Harp, is not admissible as evidence of his guilt.

The Court further finds from all the evidence produced and presented to this court that aside from the confession or confessions there was not even a scintilla of evidence to connect the defendant Bruce Harp with the crime charged.

It is therefore the judgment of this court that the State of Oklahoma has wholly failed to carry out the burden of proof required under the laws of the State of Oklahoma and the United States of America and thus this court has no alternative but to find the defendant not guilty as charged.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that the defendant, Bruce Harp, is hereby found not guilty of the crime charged and defendant is ordered to be dismissed from further custody."

At a later date, the trial judge made the following "Additional Finding of Fact":

"Now on this 4th day of March, 1968, the same being a judicial day of said court; and Loys Criswell, Assistant District Attorney appearing for the State of Oklahoma; and Robert H. Loofbourrow of Boise City, Oklahoma, appearing for the defendant, Bruce Harp; and it further appearing Mr. Loofbourrow has requested the court to make an additional finding of fact in connection with the trial of said defendant; and the court being fully advised.

The Court in accordance with the motion of attorney for defendant, hereby makes the following additional finding of fact:

1. The court finds that at the time defendant, Bruce Harp, was questioned in the office of the Assistant District Attorney of Cimarron County, Oklahoma, on the night of July 31, 1967, said defendant was in fact a suspect in connection with the crime for which he was later charged. That said fact appears from the testimony of Sheriff Mayhan."

Subsequent thereto, the State in compliance with the law, filed a notice of intent to appeal on a Reserved Question of Law. Said motion reads as follows:

## "QUESTIONS OF LAW TO BE ANSWERED

1. Was the testimony of Lester Harp in regard to the oral admission of Bruce Harp as to his guilt of shooting his mother, Undine Harp made to his father, Lester Harp admissible as evidence in the trial of Bruce Harp for murder?

2. Was the testimony of Sheriff Mayhan in regard to the oral admission of guilt by Bruce Harp made in his presence in the District Attorney's office to the father, Lester Harp admissible?

3. Under the evidence presented, was this admission of guilt by Bruce Harp obtained as the result of police in-custody interrogation as set out in Escobedo v. Illinois and Miranda v. Arizona of the United States Supreme Court as interpreted and now held by the Oklahoma Court of Criminal Appeals?

(a) As to the father Lester Harp?

(b) As to the Sheriff and Assistant District Attorney?

4. Was the testimony of the Assistant District Attorney admissible?

5. Was burden of proof on Defendant to prove his admission involuntary?

6. Was the State's evidence sufficient to sustain a conviction?"

After carefully digesting this instrument filed and designated as "Questions of Law to be Answered", we have come to the conclusion that said instrument propounds six questions to be answered by this Court. Under previous decisions of this Court interpreting the law as it pertains to an appeal by the State, we are only obligated to discuss two of the six questions. In discussing Title 22, O.S.A. § 1053, which provides for an appeal by the State, this Court said in State v. Gray, 71 Okl.Cr. 309, at page 323, 111 P.2d 514, at p. 521:

"This court has held that while the State cannot bring error or appeal to reverse an acquittal of one accused of crime, the state has the right, under the Third Subdivision of Sec. 3191, 22 Okl.St.Ann. § 1053, subd. 3, to take an appeal to this court upon *any question of law reserved by the state* during the trial of a criminal case. State v. Frisbee, 8 Okl.Cr. 406, 127 P. 1091; State v. Rule, 11 Okl.Cr. 237, 144 P. 807. In such cases the state does not bring any part of the trial or proceedings of the case, except the question reserved and the judgment of acquittal, and if *such question of law* is decided in favor of the state, *it simply set-*

*tles a question of law,* and does not affect the verdict of acquittal."

In reviewing the State's application as to this Court answering questions of law, it appears that paragraphs 1, 2, 3 (subsec. A & B), and 6, present question of fact. The State and everyone concerned is thoroughly familiar with the law as laid down in Escobedo [1] and Miranda [2] as they pertain to confessions.

■ Judge Lansden exhibited a thorough knowledge of the law as he astutely, ably, and accurately related the law in a scholarly dissertation before the judgment of acquittal. It now appears that the State is presenting us with a series of facts and requesting this Court to determine if the law in Escobedo and Miranda apply to said facts. If we should undertake to determine the applicability of the law to a given set of facts, we would constantly be engaged in a re-trial of every case involving an acquittal. This, in the Court's opinion, was not the purpose of giving the State the right to appeal upon a Reserved Question of Law.

■ However, the State does raise two questions of law—paragraphs No. 4, and No. 5. Question No. 4 was not properly reserved as Mr. Criswell was voluntarily withdrawn from the witness stand at the insistence of the State, after being advised to go ahead. The testimony in that regard is as follows:

"MR. WOOD: We call Loys Criswell to the stand.

MR. LOOFBOURROW: Let the record show defendant objects to the assistant district attorney. He occupies a position of high esteem and not a position to answer his questions from the viewpoint of conclusion of law. To this we object.

MR. WOOD: In this regard, if this court can't—can't weed out high esteem of this office and take the testimony of this witness, we will withdraw him. We feel the court could decide on esteem

---

1. 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977.

2. 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694.

held for the district attorney's office and accept the testimony as what it is offered for.

THE COURT: Gentlemen, this is real unusual because frankly I don't know about criminal cases. You know in civil cases that if the attorney is going to be a witness he does not participate in the trial. Do you have authority on that, Mr. Loufbourrow?

MR. LOUFBOURROW: No, sir.

MR. WOOD: I would like to give you the form book. It says it is better not to. We have an unusual situation. We have to lay groundwork what transpired this evening.

THE COURT: Frankly, I don't know. I know they won't permit it in Federal Court. If you are satisfied with the legality of it, I am going to let you proceed. I frankly don't know. It is very uncommon practice, as you know.

MR. WOOD: Yes, sir.

THE COURT: Ordinarily if an attorney is going to be a witness he just does not participate in the trial.

MR. WOOD: We will ask you to step down.

THE COURT: You go ahead.

MR. WOOD: No. We will go by better practice."

In view of the fact that no question of law was passed on by the trial judge, and the witness was voluntarily withdrawn, there is nothing for this Court to pass on in that regard.

This brings us to the State's question No. 5. Where does the burden lie in proving a confession voluntary—upon the defendant or the State? This was discussed at great length in the Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694, wherein the Supreme Court said:

"If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. Escobedo v. Illinois, 378 U.S. 478, 490, note 14, 84 S.Ct. 1758, 12 L.Ed.2d 977, 986. This Court has always set high standards of proof for the waiver of constitutional rights. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders."

Judge Lansden, no doubt, was thoroughly familiar with this law, as he referred to the *Miranda case,* supra, in support of his finding that "the duty was upon the State to prove the confession voluntary" (pg. 30 of finding of fact, paragraph 10). He gave the citation so it could have been easily located by one showing any curiosity in the law as to who the burden rests on in such cases.

In this regard, Judge Lansden was absolutely correct in his ruling and courageously followed the law as laid down by Supreme Court of the United States.

To follow the law is not always the popular thing to do, but to those men who have the desire to know what the law is, and the courage to enforce it, we owe a credit for keeping high the standards of our system of Jurisprudence.

With reference to the *questions eligible* to be answered herein, we support the conclusion reached by the trial judge.

Reserve questions of law eligible decided in favor of defendant in error, and adversely to the State of Oklahoma.

BRETT, P. J., and BUSSEY, J., concur.