Cheryl Ann WILSON, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. M–76–120.

Court of Criminal Appeals of Oklahoma.

July 30, 1976.

James A. Clark, of Mordy & Clark, Ardmore, for appellant.

Larry Derryberry, Atty. Gen., Robert J. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Cheryl Ann Wilson, hereinafter referred to as defendant, was charged and tried in the District Court, Carter County, Case No. CRF–75–79, for the offense of Murder in the Second Degree; she was found guilty of the offense of Accessory to a Felony in violation of 21 O.S.1971 § 173. Her punishment was fixed at a fine of Five Hundred Dollars ($500.00) and Twelve (12) months' imprisonment in the county jail, and from said judgment and sentence a timely appeal has been perfected to this Court.

There are several assignments of error which we deem unnecessary to consider, since the first assignment of error is dispositive of this appeal, and we therefore

find it unnecessary to set forth a recitation of the evidence.

■ Defendant's first assignment of error is that the trial court erred in instructing the jury as to the offense of Accessory to a Felony. The gravamen of defendant's complaint is that the offense of Accessory to a Felony is not an included offense of Second Degree Murder. We agree.

As this is a case of first impression in this State, it is incumbent upon us to trace the evolution of the offense of "accessory after the fact."

The common law had known four classifications of a party to the commission of a felony: (1) principal in the first degree; (2) principal in the second degree; (3) accessory before the fact; and (4) accessory after the fact.[1] Each was a separate and distinct wrong. Those persons who were associated in the commission of a felony were divided into two classes, namely: principals and accessories. All persons who actually participated in a felony were principals, whereas those who participated in a felony too remotely to be deemed principals, were denominated accessories.[2]

In early times English judges designated those persons present at the commission of a felony who aided and abetted but otherwise took no part in it as "accessories at the fact." Since accessories could not be tried until the principal offenders were tried and convicted a new classification arose, that being principals in the second degree.[3]

Accessories before the fact were persons who counseled, procured or commanded the felony, and were not present at the commission of the felony.[4] Accessories after the fact were to be distinguished from accessories before the fact as the former were usually extended the benefit of clergy whereas the latter were not.[5]

An accessory after the fact was a person who "received and comforted" the felon, thus aiding him to escape from justice.[6] "[A]nciently the helping of a felon to elude punishment was deemed equal in evil with the act of him who was helped."[7] The test was whether or not he rendered the "principal some personal help to elude punishment,—the kind of help being unimportant."[8] Three elements were necessary to prove one was an accessory after the fact, namely: (1) the commission of a felony; (2) knowledge that the aided person committed it; and (3) some help, aid, shelter or relief given to the felon to evade arrest or prosecution.[9]

Today such distinctions as principal and accessory are governed by statute. In England special provision by statute was made for the punishment of all accessories after the fact.[10] "Whereas the common law denied a merger of the crimes of accessory before the fact and principal, modern statutes have removed this distinction from the criminal law."[11]

■ Pursuant to our statutory scheme the parties to a crime have been classified as either principals or accessories.[12] A principal is defined as one who directly commits the offense or aids and abets in its commission, not necessarily being

1. III Holdsworth, *A History of English Law* (Reprint 1966), at p. 307.

2. I Burdick, *The Law of Crime* (1946) § 219, at p. 292.

3. Ibid.

4. III Holdsworth, note 1 supra, at pp. 308–309.

5. I Bishop, *Criminal Law* (9th ed. 1923) § 708, at p. 506; II Stephen, *History of the Criminal Law of England* (1886), at p. 237.

6. III Holdsworth, note 1 supra, at p. 308.

7. I Bishop, note 5 supra, § 692, at p. 498.

8. Ibid., § 695, at p. 500.

9. I Burdick, note 2 supra, § 224, at p. 301.

10. III Holdsworth, note 1 supra, at p. 310.

11. Comment, *Distinctions Between Accessory Before the Fact and Principal*, 19 Wash. & Lee L.Rev. 96 (1962).

12. Title 21 O.S.1971, § 171 provides:
"The parties to crimes are classified as:
1. Principals, and,
2. Accessories."

**1406**

present.[13] An accessory is defined as one who has knowledge of a felony and aids the felon in avoiding or escaping arrest, trial, conviction or punishment.[14] The distinctions between an accessory before the fact and a principal and between principals in the first degree and principals in the second degree have been abrogated.[15] Notwithstanding the fact that these distinctions have been abrogated, 21 O.S.1971, § 172 embraces the common law classifications of principal in the first degree, principal in the second degree and accessory before the fact, whereas 21 O.S.1971, § 173 embraces only the common law class of accessory after the fact. See, *Drury v. Territory,* 9 Okl. 398, 60 P. 101 (1900).

Turning to the instant case, the information charged the defendant with Second Degree Murder. [O.R. 1–2] However, the judge instructed the jury on Accessory to a Felony as a lesser included offense [O.R. 60], for which the jury brought back its verdict of guilty. [O.R. 70]

In *Kelly v. State,* 12 Okl.Cr. 208, 153 P. 1094, 1097 (1916), this Court held:

"... [T]he defendant in a criminal case has the right to be informed as to the acts which he has committed which constitute his supposed crime; he cannot be charged in the preliminary complaint and in the information with one offense, and upon his trial be convicted of another different offense, unless the same is included in the offense charged and embraced within the allegations of the information."

As previously noted, it is a necessary concomitant that a felony *must already have been committed* in order for a person to be an accessory to the crime. As was stated in *Vann v. State,* 21 Okl.Cr. 298, 207 P. 102, 104 (1922):

"An accessory, under our statutes, is not so connected with the crime, and is only connected with the offender and his interests after the offender has committed the original offense."

It necessarily follows that the offense of accessory to a felony is a separate and distinct substantive crime, and is *not a lesser included offense* of the principal crime.

As was held in our sister State of Kansas in *State v. McAlister,* 139 Kan. 672, 33 P.2d 314, 316 (1934):

"... [A]n offense thereunder [accessory after the fact] is a separate and distinct offense from that committed by the person who is aided; it does not partake of the nature of the other offense, nor is it a degree of it."

See also *State v. Key,* Mo., 411 S.W.2d 100 (1967); *State v. McIntosh,* 260 N.C. 749, 133 S.E.2d 652 (1963), *cert. denied,* 377 U.S. 939, 84 S.Ct. 1345, 12 L.Ed.2d 302 (1964); *State v. Sullivan,* 77 N.J.Super. 81, 185 A.2d 410 (1962); 21 Am.Jur.2d *Criminal Law* § 126 (1965); 42 C.J.S. *Indictment & Information* § 260 (1944).

For the foregoing reasons we therefore *REVERSE AND REMAND* the case to

13. Title 21 O.S.1971, § 172, provides:
   "All persons concerned in the commission of crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals."

14. Title 21 O.S.1971 § 173, provides:
   "All persons who, after the commission of any felony conceal or aid the offender, with knowledge that he has committed a felony, and with intent that he may avoid or escape from arrest, trial, conviction, or punishment, are accessories."

15. Title 22 O.S.1971, § 432, provides:
   "The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated, and all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, must be prosecuted, tried and punished as principals, and no additional facts need be alleged in any indictment or information against such an accessory than are required in an indictment or information against his principal."

the District Court with *INSTRUCTIONS TO DISMISS*. It is our opinion that there is sufficient evidence [16] to justify the filing of a new information charging Cheryl Ann Wilson with the offense of Accessory to a Felony if the District Attorney, in his discretion, so desires.

The Clerk of this Court is directed to issue the Mandate *FORTHWITH*.

BRETT, P. J., and BLISS, J., concur.

16. This opinion is predicated upon the fact that there is sufficient evidence proffered by the defendant, herself that (1) during direct testimony she testified that:

"Well, Charlie told us to tell them that he did it all, to keep us out of trouble, and so we told them that." [Tr. 240]

and (2) during cross-examination, defendant testified as follows:

"Q. Now, is it your story that all this was made up, that the story you gave the Sheriff that night was made up in order to protect the people that had actually committed the shooting?

"A. Yes.

"Q. You knew a crime had been committed. You knew a person had been shot?

"A. After they picked us up, yes.

"Q. At the time you gave the story to the Sheriff, the one you say was made up, you knew that a man had been killed . . . or a person had been killed?

"A. Yes.

"Q. You knew . . . You say you knew who had done it?

"A. Sir?

"Q. You knew who had committed it?

"A. No, I didn't know who.

"Q. You were making up this story in order to protect the person that actually pulled the trigger, is that correct?

"A. Yes.

"Q. All of you agreed, to protect one another.

"A. I don't understand the question.

"Q. All of you agreed to make up the story to protect one another?

"A. We agreed that . . .

"Q. Protect everybody but Charlie is that what you're telling us?

"A. Yes." [Tr. 255]